# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

* * *

No. 13-16173

CHARLOTTE WEATHERFORD,

Plaintiff-Appellant,

v.

NEVADA RURAL HOUSING AUTHORITY (NRHA); HEIDI FETTIC; TERRY SMITH KIMBERLY MCGEE,

Defendant-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
Case No.:  D.C. No. 3:10-cv-00729-RCJ-VPC

## APPELLEE'S ANSWERING BRIEF

THOMAS P. BEKO, ESQ.
CHARITY F. FELTS, ESQ.
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street
Reno, Nevada 89509
Telephone: 775-786-3930
*Attorneys for Defendants/Appellees*

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1,2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

     A.    The Housing Assistance Program.. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.    Weatherford's first accommodation request. . . . . . . . . . . . . . . . . . 6

         1.    Weatherford did not supply evidence of a disability related to her accommodation request. . . . . . . . . . . . . . . . . . . . . . . . 6

         2.    Informal review of NRHA's denial of the accommodation request for a third bedroom to be used as a study room. . . . . . 8

     C.    Weatherford's housing units. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     D.    Weatherford's second accommodation request. . . . . . . . . . . . . . . 12

         1.    Information hearing to review NRHA's denial of the second accommodation request for a third bedroom with a den or fourth bedroom be used a study room and/or physical therapy room. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         2.    Complaint filed with HUD. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Summary of Arguments.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

Legal Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.    Weatherford cannot maintain a cause of action under the FHA because she did not present evidence of a disability related to the accommodation requested.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.    Weatherford cannot maintain a cause of action under Section 504 of the Rehabilitation Act because she did not present evidence of a disability related to the accommodation requested. . . . . . . . . . . . . . 22

    C.    NRHA did not unlawfully coerce, intimidate, threaten, or interfere with Weatherford's rights under the FHA. . . . . . . . . . . . . . . . . . . . 22

    D.    Weatherford cannot maintain a private right of action for alleged violations of HUD regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    E.    Weatherford cannot maintain a claim under the FHA or Rehabilitation Act against the individual defendants. . . . . . . . . . . . . . . . . . . . . . . . . 27

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## Cases

*Alamar Ranch, LLC v. County of Boise*, CV 09-04-S-BLW, 2010 WL 1727844, *5 (D. Idaho Apr. 27, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Alexander v. Sandoval*, 532 U.S. 275, (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . 17

*Becker v. Oregon*, 170 F.Supp.2d 1061 (D.Or. 2001). . . . . . . . . . . . . . . . . . . . . 27

*C.O. v. Portland Public Schools*, 406 F.Supp.2d 1157 (D.Or. 2005).. . . . . . . . . 27

*Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir. 1997). . . . . . . . . . . . . . . . 17

*Giebeler v. M&B Assocs.*, 343 F.3d 1143 (9th Cir. 2003). . . . . . . . . . . . . . . . 18, 21

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). . . . . . . . . . . . . . . . . . 22

*Rosenfeld v. Hackett*, 07-6209-HO, 2010 WL 5067960, *2 (D.Or. Dec. 3, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Sanghvi v. City of Claremont*, 328 F.3d 532 (9th Cir. 2003). . . . . . . . . . . . . . . 21

*Taylor v. The Hous. Auth. of New Haven*, 267 F.R.D. 36 (D. Conn. 2010). . . . . 26

*Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*,

645 F.3d 152 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 27

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001). . . . . . . . . . . . . . . . 24

## Statutes/Rules

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 794(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 27

42 U.S.C. § 3604(f)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 20

42 U.S.C. § 3617. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22, 24

24 C.F.R. § 8.11, 24.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24 C.F.R. § 8.28(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24 C.F.R. § 8.33.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24 C.F.R. § 982.505(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24 C.F.R. § 982.555(a)(1)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>STATEMENT OF JURISDICTION</u>

While Appellant Charlotte Weatherford's ("Weatherford") opening brief does not provide a statement of jurisdiction, Appellee Nevada Rural Housing Authority ("NRHA") submits that the statutory basis for the subject matter jurisdiction of the district court was based upon alleged civil rights violations pursuant to 42 U.S.C. § 3604(f)(3)(B), Section 504 of the Rehabilitation Act, 42 U.S.C. § 3617, and various Housing and Urban Development ("HUD") administrative regulations found at 24 C.F.R. § 982.505(d), 24 C.F.R. § 8.11, 24 C.F.R. § 8.28(a)(5), 24 C.F.R. § 8.33, and 24 C.F.R. § 982.555(a)(1)(iv).  Weatherford's *pro se* complaint was brought in the district court under the alleged authority of 42 U.S.C. § 1983, yet Weatherford does not refer to § 1983 in her complaint and does not appear to have actually advanced any claims under 42 U.S.C. § 1983.  Nonetheless, Weatherford did bring federal questions claims under the Fair Housing Act ("FHA"), later amended by the Fair Housing Amendments Act ("FHAA" and hereinafter referred to as the "FHA")  and the Rehabilitation Act which did confer jurisdiction on the district court.

Although she does not identify any particular appealable issue or error, Weatherford appeals the district court's order granting summary judgment in favor of Appellees on her claims occurring under the FHA and the Rehabilitation Act, as well as her claims of violations of various HUD regulations.  The court of appeals has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 as the district court rendered its final decision on May 17, 2013.  (SEOR:0023-0041).

<u>**STATEMENT OF ISSUES PRESENTED FOR REVIEW**</u>

Weatherford does not identify the alleged errors committed by the district court, nor does she present this Court with a statement of issues which concisely sets forth the issues on appeal.  Lacking identified appealable legal issues, Appellees are in the difficult position of responding to an opening brief which utilizes a shotgun approach and essentially claims that the district court's error is that it did not agree with Weatherford's unsupported claims.  Because Weatherford does not identify the

1

specific error(s) of the district court, or appealable issues, Appellees will therefore identify the issues presented to the district court and will further demonstrate why the district court's decision was proper. The issues considered and decided by the district court are as follows:

1.    Whether Weatherford can maintain a private right of action for alleged violations of HUD regulations.

2.    Whether NRHA refused Weatherford's reasonable accommodation request for her claimed disabilities in violation of the FHA.

3.    Whether NRHA refused Weatherford's reasonable accommodation requestsfor her claimed disabilities in violation of Section 504 of the Rehabilitation Act.

4.    Whether Weatherford had a documented disability which would support her request for a reasonable accommodation.

5.    Whether NRHA unlawfully coerced, intimidated, threatened, or interfered with Weatherford's rights under the FHA.

6.    Whether Weatherford can maintain a claim under the FHA or Rehabilitation Act against the individual defendants.

## STATEMENT OF THE CASE

On or about March 4, 2011, Weatherford's complaint was filed with the District Court for the District of Nevada. (SEOR:0582-0590). Her *pro se* complaint alleged civil rights violations on behalf of Weatherford and her minor daughter, Ann, when she, a housing voucher recipient, requested a reasonable accommodation from NRHA, a Public Housing Agency ("PHA"), for an alleged disability. Weatherford was essentially seeking additional funding for her housing subsidy so that she could obtain or remain in a larger home or one of a higher quality.

Under the FHA, a person with a disability must be afforded a reasonable accommodation so that person can receive an equal opportunity to use and enjoy the housing benefits in the same manner as a non-disabled person.

2

42 U.S.C. §3604(f)(3)(B). Under the Rehabilitation Act, a disabled individual cannot be excluded from participating in a federal program. 29 U.S.C. § 794(a). Rather than seeking an equal opportunity, Weatherford was, in fact, seeking an accommodation so that she could receive more benefits than she was otherwise eligible for, and attempted to use a claimed disability as the vehicle for those additional benefits.

In addition to simply requesting a reasonable accommodation for a claimed disability, Weatherford was obligated to demonstrate the existence of an actual disability which was related to her accommodation request. Weatherford was never able to satisfy her burden of demonstrating an actual disability which would qualify her for the requested accommodations. This was confirmed by two subsequent determinations issued by HUD after Weatherford filed administrative claims against NRHA with the governing agency. (SEOR: 0538-0545, 0547-0549). Lacking a documented disability, Weatherford's claims of discrimination under the FHA and Rehabilitation Act were not supported. *Id.*

After completion of discovery, a Motion for Summary Judgment was filed on behalf of all Appellees as to all causes of action. (SEOR:0263-0295). The Motion for Summary Judgment was directed at the claims of Weatherford and her daughter, Ann. (SEOR:0263). After the filing of the Motion for Summary Judgment, Ann Weatherford was dismissed from the case. On March 26, 2012, Weatherford entered into a stipulation to dismiss the claims asserted by Ann Weatherford with prejudice. (SEOR:0044-0045). This is largely because she had previously failed to obtain counsel for her unrepresented daughter pursuant to the district court's order. (SEOR:0023, 0564-0566). The district court entered an order on the stipulation to dismiss Ann's claims with prejudice on April 3, 2012. (SEOR:0042-0043).

According to the district court's order directing entry of summary judgment in favor of Appellees, the Clerk's Office inadvertently closed the entire case at the time that Ann Weatherford was dismissed from the case, and it did not reopen the case until approximately one year later, on April 1, 2013. (SEOR:0023). In her opening

3

brief, Weatherford alleges that she was "tricked into having the case dismissed completely" and blames Appellees and their counsel for the inadvertent closure of the case. There was absolutely no deception or trickery on the part of Appellees or their counsel as reflected in the district court's order. *Id.* Weatherford voluntarily entered into the stipulated dismissal. (SEOR:0044-0045). When the district court reopened the case, it issued an order granting summary judgment in favor of all Appellees due to Weatherford's failure to produce the necessary evidence to support her claims. (SEOR:0023-0041).

In granting summary judgment, the district court found that: (1) Weatherford could not maintain a private right of action to enforce HUD regulations; (2) Weatherford did not provide any evidence to establish a disability and therefore did not state a prima facie case for discrimination, under the FHA or the Rehabilitation Act, based upon a failure to reasonably accommodate; (3) Weatherford did not provide any evidence that Appellees attempted to coerce, intimidate, threaten or interfere with her rights to seek a reasonable accommodation; and (4) Weatherford could not maintain a cause of action under 42 U.S.C. § 1983 against the individual Appellees for violations of the Rehabilitation Act. *Id.*

## STATEMENT OF FACTS

Weatherford sets forth a long recitation of facts in her opening brief in which she claims that she requested and was denied a reasonable accommodation for a three-bedroom housing voucher due to various alleged mental and physical disabilities. As has been consistent throughout this case, Weatherford provides no evidence which supports her claims of disabilities and which ties those alleged disabilities to the accommodation requests made by her. Her facts and her entire brief fail to point to evidence in the record which supports her claims against Appellees. The reason for this omission is simple – she does not possess the facts necessary to support her claims. Furthermore, her brief is not supported by a single citation to her excerpts of record.

4

Appellees offer the following facts, and citations to evidence in the supplemental excerpts of record ("SEOR"), which demonstrate that Weatherford was not entitled to the accommodation she sought because she failed to provide evidence supporting her claimed disabilities. Furthermore, the following facts illustrate the long history with Weatherford as a recipient of housing benefits and the exceptional efforts of NRHA in working with her to accommodate her legitimate needs, despite frequent unsubstantiated complaints about the housing units selected solely by the Weatherford family. The factual background that follows clearly shows why Appellees were entitled to entry of summary judgment and why Weatherford could not support her claims.

A.    **The Housing Assistance Program.**

Weatherford was qualified to receive certain housing benefits based upon the size of her family and her claimed family income. Those housing benefits take the form of a housing voucher which provides monetary assistance to the recipient. During the times relevant to her claims, Weatherford's family consisted of her husband, Michael Weatherford, her minor daughter, Ann Weatherford, and her adult son, Jonathan Weatherford (who moved out of the house to attend college during the time that Weatherford requested her accommodations). (SEOR:0300). Based upon her family size and income, NRHA provided Weatherford with a subsidy in the form of a housing voucher to be applied toward thr cost of renting a home of her choosing. (SEOR:0301).

It is important to note, particularly because Weatherford disregards this point, that NRHA is not involved in the selection of a rental unit. NRHA provides a housing voucher to participants who qualify for the program. It is the participant who selects a rental unit based upon her individual and family needs. Once the participant identifies a proposed rental unit, the Housing Authority then visits the home to conduct an inspection to ensure that the house meets certain Housing Quality Standards as mandated by HUD. (SEOR:0313). After a successful inspection to

determine that the participant-selected home meets the standard, arrangements are made to provide the subsidized benefits to the owner/landlord of the rental home.

**B.    Weatherford's first accommodation request.**

Weatherford's first request for an accommodation based on her claimed disability occurred in December 2008.  At that time Weatherford and her family were living at a house located at 1325 E. Marion Russell Drive, in Gardnerville, Nevada.  (SEOR:0340).  Prior to moving into this home, Weatherford located the home and participated in an inspection of the home.  (SEOR:0342-0372, 0303).  The NRHA played no role in choosing the residence where Weatherford would live.  (SEOR:0301).  Weatherford signed off on the initial inspection of the home (and each subsequent annual inspection and did not note any problems or issues with this home).  (SEOR:0342-0372)

In early December 2008, Weatherford notified NRHA that she and her family would be vacating the house on Marion Russell and moving to a different location.  (SEOR:0340).  At that time Weatherford's son, Jonathan, no longer lived with his parents which caused the size of the family unit to decrease.  This would lead to a reduction in her voucher benefits due to a change in the family size.  In anticipation of this, in December of 2008, Weatherford made a request for an accommodation which would allow her to retain a three-bedroom housing voucher.  (SEOR:0374-0375).  In requesting a third bedroom as an accommodation Weatherford vaguely referred to her "mental and physical issues."  *Id.*  She further claimed to need a place to study for her "future classes in college" and she also referenced her work-related injury which allegedly limits her mobility.  (SEOR:0340, 0374-0375).  According to Weatherford, she wanted to "keep a three bedroom house for [her] accommodation."  (SEOR:0340).

**1.    Weatherford did not supply evidence of a disability related to her accommodation request.**

In response to her accommodation request, NRHA forwarded the request to

6

Weatherford's doctor, Cesar Udani, on December 10, 2008, so that he could provide additional information relevant to the medical reasons supporting the claimed disability and the accommodation request. (SEOR:0377-0379). When no response was received from Dr. Udani, the accommodation request was faxed again to him on December 30, 2008. (SEOR:0377). Dr. Udani replied on January 8, 2009, and stated that Weatherford should have a ground level, three-bedroom unit due to her lower back pain. (SEOR:0381-0382). Dr. Udani stated that Weatherford "needs a quiet study room since she is in college" but did not explain how any alleged disability or medical condition was related to the requested third bedroom. *Id.*

At the time of the December 2008 accommodation request, Weatherford was already the recipient of a payment voucher for a three-bedroom unit and she was, in fact, living in a three-bedroom unit. (SEOR:0301). Nonetheless, she submitted an accommodation request for the type of unit in which she already lived. (SEOR:0301, 0374). Because Jonathan moved to Sacramento, California in October 2008, to attend a technical college, there were only three family members living at the Weatherford residence. (SEOR:0386). Weatherford preemptively submitted her December 2008 accommodation request in an effort to maintain her current housing voucher status even after her upcoming recertification review.

NRHA evaluated Weatherford's accommodation request and considered Dr. Udani's documentation, NRHA payment schedule standards, the Weatherford's income level, and the family size. (SEOR:0396). On January 27, 2009, NRHA denied the accommodation request based on the additional annual cost of $3,528 to continue to maintain Weatherford, her husband and daughter in a three-bedroom payment voucher. (SEOR:0394-0396). Because payment vouchers are certified on an annual basis, Weatherford was also informed that, at her recertification on June 1, 2009, her payment standard would be lowered to a two-bedroom standard due to the size of her family, and consistent with housing assistance standards. (SEOR:0394).

7

Weatherford did retain her three-bedroom housing voucher in January 2009, and continued to occupy a ground-level home with three bedrooms and two bathrooms. As such, it met all the medical standards which her physician had recommended. (SEOR:0382). Weatherford would continue to receive those benefits for approximately six more months, until her recertification hearing in June 2009. (SEOR:0394). Since the home was occupied only by Weatherford, her husband, and her daughter, the third bedroom was unoccupied and available for use as a quiet study room. Therefore, Weatherford's accommodation request was unnecessary as she was already living in a house that satisfied her request.

Moreover, the form provided by Dr. Udani did not identify any medical condition which would in any way support Weatherford's request for a separate quiet study room. (SEOR:0381-0382). He merely made a blanket statement that "she needs a quiet study room since she is in college." (SEOR:0382) Dr. Udani did reference lower back pain and lower extremity weakness but did not correlate this condition to any need for a study room. *Id.* While NRHA did not specifically reference this glaring defect in its denial of Weatherford's redundant accommodation request, it would nonetheless provide full justification for the denial of her requested accommodation. (SEOR:0396). Weatherford never provided NRHA with a physician's report or documentation to indicate that she has an identifiable disability that could be accommodated through the use of a separate quiet study room.

### 2. Informal review of NRHA's denial of the accommodation request for a third bedroom to be used as a study room.

Despite the fact that she was already living in a three-bedroom housing unit, Weatherford was dissatisfied with NRHA's decision to deny her accommodation request. On February 24, 2009, she requested an informal review of NRHA's decision. (SEOR:0398). During the informal review, NRHA clearly stated that it was not denying Weatherford's need for a ground level unit. (SEOR:0405, ll. 24-25). But NRHA did explain that it is not reasonable to provide a third bedroom simply for the

purpose of using it as a study room, particularly when the request was not related to a medical condition. (SEOR:0406, ll. 1-6).

During the informal review Weatherford admitted that she was already in a three-bedroom unit and that she was using her son's former bedroom as a study room because she did not have any room for a desk in her own bedroom. (SEOR:0406, ll. 17-25). She reiterated the fact that she was using the third bedroom as an exercise room and a study room in a subsequent hearing with NRHA. (SEOR:0444, ll. 13-14). Her own admissions demonstrate that her accommodation request was redundant because she was using the unoccupied third bedroom as a study room. Weatherford confirmed during the informal review that her son was living in Sacramento and had moved out of the home. (SEOR:0414, ll. 24-25).

During the informal review, NRHA explained that the information provided by her doctor did not relate any alleged disability to a medical need for a study room. (SEOR:0408, ll. 2-4). Weatherford responded by stating that "I don't need a three-bedroom. I really don't, okay." (SEOR:0416-0417). She stated that if she was approved for a two-bedroom unit (due to her family size), she just needed to ensure that she would be able to have two bathrooms because her urologist recommended a second bathroom. (SEOR:0417, 0454). All of Weatherford's previous residences, as well as the Marion Russell residence, were two-bathroom units. Thus, at the conclusion of the informal review, and based upon Weatherford's own representation that her real requirement was a two-bathroom unit rather than three-bedroom unit, it appeared to NRHA that all of her issues had been fully resolved.

### C.    Weatherford's housing units.

In April 2009, Weatherford moved from the Marion Russell home to a different house located at 621 Blurock, in Gardnerville, Nevada. As with the earlier homes, Weatherford and her husband located and selected this home and NRHA was not involved in that process. (SEOR:0302). Like the Marion Russell house, the Blurock house was a three-bedroom unit with two bathrooms. *Id.* Based on Weatherford's

earlier representations in the informal review, the Bluerock house satisfied her documented medical needs. *Id.* After her selection of the house, NRHA inspected the Bluerock house and Weatherford signed off on the inspection report without noting any problems or deficiencies with the home. (SEOR:0456-0461).

Despite having selected the Bluerock home herself and failing to note any problems with the residence upon inspection, Weatherford complained almost immediately to her landlord that the carpets and air ducts were dirty, causing her health problems. (SEOR:0461, 0463). In response, the landlord had the carpets and air ducts cleaned. (SEOR:0465). Weatherford was not satisfied with the cleaning and continued to allege that the home was causing her health problems. (SEOR:0467).

Due to Weatherford's claimed, but still undocumented, medical issues, NRHA generously issued her a new housing voucher on July 30, 2009, which allowed her to move to a new residence and break her lease at the Bluerock house even though she had only lived in the house for four months. (SEOR:0469, 0304). Weatherford then located another three-bedroom, two-bath property located at 1351 Toler Lane in Gardnerville, Nevada. (SEOR:0307). Again, NRHA was not involved in the selection of this home.

Weatherford's unsupported recitation of facts claims that she was *forced* to live in a home filled with "toxic black mold," cat urine, and cigarette smoke. In reality, and as supported by uncontroverted evidence, Weatherford selected the Toler Lane home as her residence. After two visits to the house, she submitted a request for tenancy approval for the Toler Lane unit on August 6, 2009, and she entered into a lease agreement with the landlord on August 20, 2009. (SEOR:0469). Weatherford made a commitment to move into the Toler Lane house before NRHA had an opportunity to inspect it. (SEOR:0305, 0469). A few short days later, on August 24, 2009, Weatherford spoke to Heidi Fettic, NRHA Rental Manager, and Kimberle McKee, NRHA Caseworker, regarding the Toler Lane unit and stated that she had slept there the night before and already partially moved into the home.

10

(SEOR:0469).  During that same conversation, she reported that she was feeling sick after having slept in the house.  *Id.*

 Since the inspection by NRHA had not been conducted yet, Weatherford was advised by Heidi Fettic that she and her family could select a different house that suited their needs and that they did not have to commit to the Toler Lane house.  (SEOR:0305, 0469).   Weatherford refused that advice and stated that she did not want to go through the process of another move.  (SEOR:0305, 0469.  Instead, she elected to keep herself and her family (consisting of Michael and Ann) in the home.

 An inspection of the Toler Lane home was conducted by NRHA on September 2, 2009.  (SEOR:0473-0478).   As with all previous inspections, Weatherford was present for the inspection and did not note any problems or issues with the home.  (SEOR: 0306,0478).   The evidence clearly demonstrates that Weatherford was never *forced* by NRHA to live a "toxic" or "substandard" home.  Nonetheless, she alleged that the Toler Lane house was making her sick due to an undocumented mold problem.  She contacted her landlords, Gregg and Deborah Nimmo, to demand repairs to the home.  (SEOR:0470).  The Nimmos did order a third carpet cleaning on September 15, 2009, after having them cleaned on August 4, 2009, and August 10, 2009.  (SEOR:0481).  Weatherford remained unsatisfied and continued to complain to her landlords.

 On November 23, 2009, Gregg Nimmo offered to allow Weatherford to terminate the lease early, receive a refund of her security deposit, and assist with finding a new home.  (SEOR:0487-0488).   The Nimmos also offered to provide Weatherford with a good reference for her future landlords.  (SEOR:0488).  Despite Weatherford's complaints of illness because of the alleged mold in the Toler Lane home, she refused the Nimmos' offer of assistance.  Her flat refusal of another opportunity to move from the home which she claimed was filled with "toxic black mold" belies her claims that she was *forced* to live there by NRHA.

11

### D.    Weatherford's second accommodation request.

Instead of moving from a home which she claimed was making her sick, on January 4, 2010, Weatherford took a different approach and submitted another request for an accommodation to NRHA. (SEOR:0490-0492). This request sought, *inter alia*, a "cleaner and safe home" that "does not have mold or older carpet." (SEOR:0490). In a one-year time period, Weatherford had moved out of the Marion Russell home, in and out of the Bluerock home, and into the Toler Lane home. The second accommodation request claimed that both Weatherford and her daughter suffered from asthma and again claimed that she needed extra space for college. (SEOR:0491) She also claimed, for the first time, that she need an extra room for physical therapy. (SEOR:0490-0491)

After receiving this accommodation request, NRHA forwarded a request to Weatherford's treating physicians, Dr. Udani and Dr. Lokshin seeking to verify her claimed disability. (SEOR:0494-0497, 0499-0502). Dr. Udani did not respond to NRHA's request for information. A second request was faxed to Dr. Udani on March 4, 2010, and again, no response was received. (SEOR:0499). In the meantime, Dr. Lokshin did return the reasonable accommodation form on February 2, 2010, and explicitly responded "no" to the question of "[d]oes the individual have a disability?" (SEOR:0504). He further stated that after an evaluation, Weatherford "did not show any respiratory disability." *Id.* Unlike Weatherford's unsubstantiated facts in her opening brief, the actual medical documentation in this case demonstrates that she did not have a respiratory disability or *any* disability to support her second accommodation request. *Id.* Based on the information that was provided by the respiratory specialist indicating that Weatherford did not have a respiratory disability, NRHA denied her January 2010 accommodation request. (SEOR:0506-0407).

Weatherford's request for an extra room for college and physical therapy was not supported by any physician as being related to a disability. Neither Dr. Udani nor any other physician documented a disability that would demonstrate a nexus between

12

the request and the alleged asthma disability, or *any* disability.  In fact, Weatherford testified in her deposition that, as of January 4, 2010, when she submitted her second request for reasonable accommodation, she did not have a prescription for physical therapy from any healthcare provider.   (SEOR:0308). And, as in her prior accommodation request, there was still no connection between her alleged asthma disability and her request for an additional study room or physical therapy room.

> **1.    Informal hearing to review NRHA's denial of the second accommodation request for a third bedroom with a den or fourth bedroom be used as a study room and/or physical therapy room.**

Weatherford was once again dissatisfied with NRHA's decision denying her accommodation request due to a lack of medical documentation which would support the requested accommodation.   As a result, she requested another hearing. Weatherford was provided with a hearing on March 9, 2010, in front of Hearing Officer Richard Mendoza.  (SEOR:0420-0452, 0509).

During the hearing, Heidi Fettic clarified that Weatherford's requests had been denied because of: (1) the undue hardship caused by the additional expense to simply have an extra room for studying without any documented disability supporting the request; (2) the respiratory specialist reported that she did not have a disability; and (3) Dr. Udani failed to respond to the requests for information from NRHA and did not provide a link between the claimed disability and the requested accommodation. (SEOR:0423-0424).  During this hearing Weatherford argued, for the first time, that she had a learning disability caused by a traumatic brain injury. (SEOR:0429, ll. 13-20).   When asked by Hearing Officer Mendoza if she has ever submitted any documentation supporting her claims of a learning disability or traumatic brain injury, Weatherford admitted that she had not.  *Id.*

Weatherford further argued that she required an extra room for physical therapy purposes, but when questioned about her alleged physical therapy she stated that she

was not under the care of a physical therapist. (SEOR:0433, ll. 14-19). No documentation substantiating her physical therapy claims was ever provided to NRHA. (SEOR:0308).

Weatherford used the hearing as an opportunity to speculate about whether the Toler Lane home contained mold. (SEOR:0438, l. 21). She claimed that "the black spots may be mold." (SEOR:0438, l. 7). Weatherford, who is not a medical professional, further speculated that "[b]ronchitis comes from mold, . . . it could have been misdiagnosed as asthma." (SEOR:0439, ll. 17-18). She further claimed that bronchitis was a "lack of oxygen to the brain." (SEOR:0440, l. 18). And she claimed that, although she was never admitted to a hospital, she was "extremely ill" and at "the point of death" when the Toler Lane home was inspected by NRHA. (SEOR:0442, l. 1). She provided no supporting evidence for any of these claims. Notably, she never mentioned her predicament of being "at the point of death" to the NRHA employee who inspected the Toler Lane home in September 2009. (SEOR:0473-0478).

Nonetheless, the hearing officer adopted a conservative approach and awarded her an opportunity to move from the Toler Lane house. (SEOR:0441, ll. 16-23). This is the same opportunity that was offered by NRHA and the Nimmos (landlords) on prior occasions. (SEOR:0469, 0487-0488). Hearing Officer Mendoza stated that "[w]e'll get you a healthier place, but we can't get you in a larger one, not just for the reasons you're stating."" (SEOR:0442, ll. 9-10). When Hearing Officer Mendoza indicated that he was not going to award her a voucher for a larger house, Weatherford again modified her story and then claimed that her adult son, Jonathan, had moved back home and "need[ed] his own room because of his disabilities." (SEOR:0442, ll. 12-13). Weatherford claimed these new facts entitled her to a three-bedroom voucher. (SEOR:0442). Based upon these new facts, NRHA agreed to provide Weatherford with a three-bedroom housing voucher. (SEOR:0449, ll. 1-5). Notably, however, Jonathan later testified in his deposition that he never lived with

14

his parents after he moved out for college in October 2008, and he did not receive disability benefits after turning age 18. (SEOR:0338, 0390).

Nonetheless, as a result of the hearing, NRHA and Weatherford reached an agreement regarding her housing assistance. (SEOR:0449-0451). That agreement was affirmed by Weatherford during the hearing and was later memorialized by Hearing Officer Mendoza in his *Findings of Facts and Conclusions of Law and Order*, as follows:

1. Due to the potential mold in her current unit that Ms. Weatherford is allowed to move into a different unit.

2. Ms. Weatherford will be issued a three-bedroom voucher due to her family size.

3. Should Ms. Weatherford's family size change, that the voucher will be adjusted according to HUD regulations.

4. Ms. Weatherford will find a new unit that meets her standards, the NRHA inspector will inspect the unit to Housing Quality Standards, and it is Ms. Weatherford's responsibility to ensure it meets her standards prior to move in.

5. Ms. Weatherford agrees to not bring another appeal to NRHA for at least the next year. (Ms. Weatherford will stay in the new unit she chooses for the full year the lease will be signed for). (SEOR:0509-0511).

## 2. Complaint filed with HUD.

Despite the agreement reached as a result of the hearing, Weatherford filed a formal complaint with HUD alleging discriminatory housing practices under the FHA on or about March 10, 2010. (SEOR:0515-0527). The issues raised in her complaint were identical to the issues presented in the informal hearing held one day earlier on March 9, 2010. (SEOR:0420-0452). Incredibly, in her HUD complaint, Weatherford claimed that during the March 9, 2010 hearing, NRHA "upheld their [sic] decision to deny the complainant's request for a three-bedroom voucher." (SEOR:0522). As memorialized in the Hearing Officer's Order, this is patently untrue. (SEOR:0511)

15

Naturally, NRHA was confused by Weatherford's filing of a HUD complaint which brought claims that had been resolved just one day earlier. As such, Weatherford's almost immediate breach of the agreement reached during the hearing caused NRHA to place a temporary hold on the three-bedroom voucher. (SEOR:0531). Meanwhile, Weatherford and her family continued to occupy the three-bedroom residence on Toler Lane. Despite the confusion created by the filing of a HUD complaint just one day after the hearing, NRHA nevertheless released the three-bedroom payment voucher to Weatherford on March 29, 2010. (SEOR:0533).

The subsequent investigation conducted by HUD determined that Weatherford's claims of disability discrimination were unfounded. (SEOR:0538-0545). This was largely supported by HUD's independent investigation and requests to Dr. Lokshin regarding Weatherford's claimed disabilities. That investigation revealed that neither Ann nor Weatherford had any allergies to mold and that neither of them had significantly symptomatic asthma. (SEOR:0535-0536). Notably, Dr. Lokshin did report to HUD that Weatherford had a severe allergy to her cat and the only reasonable accommodation he would suggest would be the removal of the cat from the household, which she refused (SEOR:0536). HUD issued a *Determination Letter of Findings* wherein it stated that "[b]ased on the evidence obtained during the investigation, the Department has determined that reasonable cause does not exist to believe that a discriminatory housing practice has occurred." (SEOR:0538). Notable findings and conclusions in the HUD reported included:

1.    Neither Weatherford nor Ann suffer from mold allergies;

2.    Weatherford's conditions did not constitute a disability;

3.    Weatherford's physical therapy equipment would not require an additional room;

4.    Weatherford was issued a three-bedroom voucher on March 9, 2010, due to a reported change in family size, but not as a reasonable accommodation;

16

5.    Weatherford signed off on the inspection forms and did not indicate that mold was present in the Toler Lane home;

6.    NRHA is not required, under the HCV program, to address the cleaning of carpets and air ducts;

7.    A request for an increase from a three-bedroom voucher to a four-bedroom voucher was not supported by Weatherford's doctors;

8.    There is no reasonable cause to believe that the Fair Housing Act has been violated;

9.    NRHA is in full compliance with the requirements of Section 504 of the Rehabilitation Act; and

10.    NRHA was in full compliance with the requirements of the Americans with Disabilities Act.  (SEOR:0543-0545).

Weatherford appealed HUD's determination to the Washington, D.C. HUD office to seek a review of the San Francisco office's *Letter of Findings* and *Determination of No Reasonable Cause*.  (SEOR:0547-0549).  The San Francisco HUD office's *Letter of Findings* was sustained and the Washington, D.C. HUD office's decision concerning the matter constituted a formal determination on the subject.  *Id.*

## STATEMENT OF THE STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo.  *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

The district court properly grants summary judgment for claims under the FHA for failure to accommodate a disability when the plaintiff fails to establish a prima facie case of discrimination. *See Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003). Critical to that prima facie case is the existence of a disability – a material fact that Weatherford was not able to demonstrate. In fact, all of her alleged facts are unsupported by the record. Therefore, the district court's grant of summary judgment in favor of Appellees was proper and should be affirmed.

## SUMMARY OF ARGUMENT

The main question in this case is whether the FHA and the Rehabilitation Act required NRHA to provide a reasonable accommodation for a disability which was never actually established by Weatherford, and for which her treating physicians could not substantiate or tie to the requested accommodation. All issues in this case flow from Weatherford's claimed, but unsubstantiated, disability.

The May 17, 2013 Order should be affirmed in all respects because the district court correctly determined that Weatherford did not present any evidence which would satisfy the elements of her prima facie case for discrimination under the FHA and the Rehabilitation Act, or the elements necessary to prove coercion, threat, interference, or intimidation under the Rehabilitation Act . Furthermore, the district court did not err when it determined that Weatherford cannot bring a private cause of action for alleged violations of HUD regulations and cannot maintain a cause of action against individuals employed by NRHA because such claims fail as a matter of law.

Weatherford's claims are dependent upon her ability to demonstrate that she has a disability. As correctly pointed out by the district court, Weatherford did not present any evidence to demonstrate the existence of a disability which would entitle her to the accommodation she requested from NRHA. Even a de novo review will not cure Weatherford's failure to satisfy the elements or her claims.

18

The first element of Weatherford's prima facie case is absent in this case – either because she did not provide any medical evidence to support the existence of a disability which could necessitate the requested accommodation, or because she plainly admitted she did not actually require the accommodation she was requesting. (SEOR:0382, 0416-0417, 0441 ll. 18-18, 0535-0536). Failing to establish a disability is the death knell in her claims of discrimination.

## LEGAL ARGUMENTS

### A. Weatherford cannot maintain a cause of action under the FHA because she did not present evidence of a disability related to the accommodation she requested.

In her opening brief, Weatherford claims that she was entitled to a reasonable accommodation due to her disability, but throughout this case she has neglected her obligation to prove that she had a disability which would necessitate the accommodation she requested. In her first request for an accommodation, she wanted to retain her three-bedroom housing voucher because of her "mental and physical issues." (SEOR:0374-0375). She further claimed to need a place to study for her "future classes in college," and she also referenced her work-related injury which allegedly limits her mobility. (*Id.*; SEOR:0340). According to Weatherford, she wanted to "keep a three bedroom house for [her] accommodation." (SEOR:0340).

Following her first request, NRHA sought information from the physician named on Weatherford's accommodation request. (SEOR:0377-0379). NRHA's Administrative Plan explains that "[t]here must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability." (SEOR:0552). After some delay, Dr. Udani eventually responded and noted that she suffered from severe low back pain and some lower extremity weakness which would require a ground-floor unit. (SEOR:0381-382). He further stated that she needed a quiet study room because Weatherford was in college; however, the physician completely failed to demonstrate any link between this disability and her request for

a third bedroom.  *Id.*  Furthermore, at a later hearing, Weatherford withdrew her request for a third bedroom and stated that the only accommodation she needed was a unit with two bathrooms.  (SEOR: 0416-0417).

In her second request for an accommodation, Weatherford wanted a larger home with a third bedroom and a den, or a fourth bedroom.  (SEOR:0490-0492).  She claimed she had asthma and need the extra space for college and for physical therapy.  (SEOR 490).  Again, NRHA sought information from the physicians named on Weatherford's accommodation request forms.  (SEOR:0494-497, 0499-0502).  NRHA received a response from Dr. Lokshin, her respiratory specialist, but never received a response from Dr. Udani.  (SEOR:0504).  Dr. Lokshin stated that Weatherford did not have any respiratory disability and offered no other information regarding a disability which would necessitate extra rooms for college or physical therapy.  *Id.*  Additionally, in her March 9, 2010 hearing, Weatherford admitted that she never submitted any documentation to support any type of cognitive or learning disability, or a need for physical therapy.  (SEOR:0429, 0433)

From the inception of her original request for an accommodation, Weatherford has been operating under a serious misunderstanding about her rights under the law.  Weatherford assumes that a person with a disability is entitled to benefits greater than a non-disabled person.  The law merely requires that individuals with genuine disabilities are entitled to a reasonable accommodation so that the disabled individual can enjoy the benefits of the housing program in the same manner as non-disabled individuals.  *See* 42 U.S.C. §3604(f)(3)(B).  The law does not, however, entitle a disabled individual greater access or greater benefits.  *Id.* (A reasonable accommodation may be necessary to afford such person *equal opportunity* to use and enjoy a dwelling).  Throughout the entire course of her participation in the housing voucher program, Weatherford has continuously sought benefits which were far in excess of those which a non-disabled person would be afforded.  And, of course, this all assumes that the individual can actually demonstrate that she suffers from a

20

disability which would warrant the requested reasonable accommodation.

Despite her opportunities to do so, Weatherford never presented information to NRHA identifying a relationship between the requested accommodation and the claimed disability.  In fact, other than providing information supporting her lower back problems and a need for a ground-floor unit, Weatherford never presented any information to support her claims that she had a disability.  Obviously she would have preferred to receive a voucher for a larger home because it would have been more convenient for her, but her personal preferences do not justify or mandate the accommodations she requested.  *See Sanghvi v. City of Claremont*, 328 F.3d 532, 538 (9th Cir. 2003) (accommodation sought by family was for personal benefit based on economic concerns rather than therapeutic concern of disabled residents);  *See also Alamar Ranch, LLC v. County of Boise*, CV 09-04-S-BLW, 2010 WL 1727844, *5 (D. Idaho Apr. 27, 2010) (a reasonable accommodation must be for the benefit of the disabled, and not merely the personal gain of the requester).

The district court correctly pointed out that a plaintiff who makes a claim of discrimination for failure to provide a reasonable accommodation must demonstrate that "(1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler v. M & B Associates*, 343 F.3d 1143, 1147 (9th Cir. 2003).

Weatherford was never denied a ground-floor unit to accommodate the disability related to her back. (SEOR:0405).  However, she has never produced any evidence to establish a disability which would require NRHA to grant the accommodations requested by Weatherford.  And, during the informal hearing to discuss her first accommodation request, Weatherford stated that she did not need a three-bedroom unit, just a two-bathroom unit. (SEOR:0416-417). Failing to establish a disability which would necessitate the requested accommodations is fatal to

21

Weatherford's burden to establish a prima face case for discrimination for failure to reasonably accommodate. The district court correctly recognized this when it denied her FHA claim.

**B.    Weatherford cannot maintain a cause of action under Section 504 of the Rehabilitation Act because she did not present evidence of a disability related to the accommodation she requested.**

The district court correctly determined that Weatherford's claims under Section 504 of the Rehabilitation Act fail for the same reasons as her claims under the FHA. The Rehabilitation Act prohibits discrimination on the basis of disability in all federally funded programs. 29 U.S.C. § 794(a). "To establish a violation of § 504 of the [Rehabilitation Act], a plaintiff must show that (1) she is handicapped within the meaning of the [Rehabilitation Act]; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

Weatherford's first accommodation request did not establish that she was entitled to a three-bedroom house for lower back pain, the only disability she ever actually demonstrated. Her second accommodation request did not establish the existence of any other disabilities. As such, Weatherford failed to show that she suffers from a disability within the meaning of the Rehabilitation Act. This claim, like the FHA disability discrimination claim, must fail for these reasons.

**C.    NRHA did not unlawfully coerce, intimidate, threaten, or interfere with Weatherford's rights under the FHA.**

Weatherford's final claim of coercion, threatening, intimidation and interference stems from the agreement that was reached and ordered by the Hearing Officer in March 2010. The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right granted or protected by the Act. 42 U.S.C. § 3617. The March 9, 2010 hearing was held

22

because Weatherford wanted a review of NRHA's decision to deny her request for a third bedroom with a den or a fourth bedroom because she did not have a disability warranting the accommodation.

At that hearing, Weatherford claimed she had a traumatic brain injury, but admitted she never provided any documentation to prove it. (SEOR:0429). She claimed she needed the extra room for physical therapy, but admitted she did not have a prescription or order for physical therapy from a physician or medical professional. (SEOR:0433, 0308). She also claimed that she was living in a toxic house filled with mold. (SEOR:0440). She neglected to point out the many opportunities she had to move out from the Toler Lane house and select another house, which she flatly refused. (SEOR:0305-306, 0440, 0487-0488, 0469). Nonetheless, due to the potential for mold, the Hearing Officer was prepared to award Weatherford an opportunity to select a different home under her current housing voucher. (SEOR:0441-0442).

It was at that point that she claimed her son had moved back in and she would need a three-bedroom voucher due to an increase in family size. (SEOR:0442-0446). Presumably to hedge her bets, Weatherford claimed for the first time at that hearing that her adult son had moved back home and was entitled to his own bedroom because of his alleged disabilities. *Id.* Ultimately, this information did not prove correct as Jonathan later testified that (1) he never moved back home after leaving for college in 2008, and (2) he never received disability benefits after turning age 18. (SEOR:0388, 0390). Because Hearing Officer Mendoza did not know of the falsity of Weatherford's factual representations[1], he was persuaded that Weatherford's family size had changed and he awarded a three-bedroom voucher for a different house of Weatherford's choosing. (SEOR:0511).

---

[1] The falsity of her representations was not known until the deposition of Jonathan Weatherford taken during the course of this litigation, on December 21, 2011.

23

Weatherford confirmed that a three-bedroom voucher and the opportunity to move to a different house would take care of all her problems. (SEOR:0449). She further agreed that she would carefully select her next house, it would be inspected, and she would not bring another appeal of this issue within the year. (SEOR:0449-0450). The agreement between NRHA and Weatherford was memorialized and ordered by Hearing Officer Mendoza on March 9, 2010. (SEOR:0509-0511). Notably, Weatherford never denied the existence of this agreement, she simply chose to ignore it.

In order to establish a claim of retaliation "a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). The district court correctly pointed out that, under 42 U.S.C. § 3617, an adverse action would be in the form of coercion, threats, intimidation or interference. *Id.* While it is true that Weatherford engaged in protected activity by exercising her right to request a reasonable accommodation under the FHA, she was never subjected to any adverse action by NRHA that would satisfy the necessary elements of a retaliation claim. *Walker* at 1128. She freely and voluntarily entered into an agreement with NRHA during the hearing.

On March 16, 2010, one week after the Hearing Officer's determination, NRHA presented Weatherford with an acknowledgment which reiterated Mr. Mendoza's findings and the mutual agreement of the parties stemming from the March 9, 2010 hearing. (SEOR:0513). It is this acknowledgment which Weatherford claims was an adverse action taken against her. In fact, there was no adverse action at all. Although Weatherford had already agreed to all of the terms in the acknowledgment (and these same terms were included in Mr. Mendoza's order), Weatherford refused to sign the acknowledgment. NRHA did not press the issue with Weatherford. Her refusal to sign the acknowledgment did not change the agreement

24

between the parties and the order of the Hearing Officer. She has presented no evidence which would support her claim that NRHA attempted to coerce, intimidate, or threaten her to sign the agreement.

Weatherford also claims that NRHA revoked the three-bedroom voucher that was awarded by Mr. Mendoza during the hearing. The voucher was never revoked and Weatherford was never deprived of a three-bedroom residence. On March 26, 2010, NRHA did put the voucher on a temporary hold while it attempted to understand why Weatherford filed the HUD complaint just one day after she agreed to settle all issues with NRHA related to her housing voucher. (SEOR:0515-0527, 0531). Within three days, and despite Weatherford's clear breach of the agreement, NRHA issued the three-bedroom voucher to Weatherford on March 29, 2010. (SEOR:0533). As indicated by the letter issued by NRHA, this three-day hold was not intended to coerce, intimidate, threaten or interfere with her rights under the housing program or her rights to file a HUD complaint. (SEOR:0531, 0533). Obviously, she had already filed the HUD complaint. NRHA was merely trying to reconcile the fact that Weatherford had previously agreed to the issuance of the three-bedroom voucher, while also filing a complaint which claimed that NRHA refused to issue the three-bedroom voucher. (SEOR:0522).

The district correctly noted that Weatherford presented no evidence that the three-day delay inhibited her HUD complaint or otherwise interfered with HUD's review process. In fact, NRHA fully participated in HUD's review process and provided all information requested by HUD. (SEOR:0529, 0538-0545).

Just as Weatherford failed to produce any evidence of a disability which would justify requests for a third or fourth bedroom, Weatherford likewise failed to present any evidence of unlawful coercion, intimidation, threats, or interference with respect to Weatherford's participation in the FHA housing program.

25

D.     **Weatherford cannot maintain a private right of action for alleged violations of HUD regulations.**

Weatherford's Complaint asserts causes of action for violations of the FHA and the Rehabilitation Act, as well as various provisions of HUD regulations. Weatherford does not enjoy a private right of action to enforce HUD regulations which provide for the specific and tangible components of the programs offered by HUD. Much like the instant case, in *Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d. Cir. 2011), the public housing tenants commenced an action alleging that the Housing Authority violated their rights under the FHA, the FHAA, Section 504 of the Rehabilitation Act, and regulations promulgated thereunder. *Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011). The court determined that the public housing tenants did not enjoy a private right of action to enforce HUD regulations governing the housing voucher program. *Id.*

A regulation may be privately enforced if it "invoke[s] a private right of action that Congress through statutory text created" *Taylor at 153 citing Alexander v. Sandoval*, 532 U.S. 275, (2001). "In other words, a right of action 'can extend no further than the personal right conferred by the plain language of the statute." *Taylor* at 153 (internal citations omitted). The Second Circuit affirmed the carefully considered decision of the district court which thoroughly discussed the issue of whether there is a separate regulation-based right to be enforced through a private right of action. *Id.* at 164; *Taylor v. The Hous. Auth. of New Haven*, 267 F.R.D. 36, 40-47 (D. Conn. 2010) aff'd sub nom. *Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152 (2d Cir. 2011) (since the regulations speak to specific components of the Section 8 Program, it cannot be said to confer rights that come within the scope of the general right conferred by Section 504 itself). Summary judgment was properly entered on the claims which attempt to bring a private cause of action to enforce HUD regulations.

**E.    Weatherford cannot maintain a claim under the FHA or Rehabilitation Act against the individual defendants.**

Finally, Weatherford's original Complaint asserted claims against individual employees of the NRHA – Heidi Fettic, Terry Smith and Kimberle McKee. Weatherford's opening brief does not address or advance the issue of possible individual liability and offers no support for this claim.

In fact, there is no legal support for her claims against the individuals. Courts have followed the well-established rule that disability discrimination claims cannot be asserted against individually named defendants. *See, Rosenfeld v. Hackett*, 07-6209-HO, 2010 WL 5067960, *2 (D.Or. Dec. 3, 2010) citing *C.O. v. Portland Public Schools*, 406 F.Supp.2d 1157, 1172 (D.Or. 2005) citing *Becker v. Oregon*, 170 F.Supp.2d 1061, 1066-67(D.Or. 2001) (when addressing FHAA accommodation claims courts follow the well-established Ninth Circuit rule in the closely related field of disability discrimination under Title VII and the Americans with Disabilities Act (ADA), prohibiting individual capacity claims against individual defendants).

Furthermore a plaintiff cannot bring an action under 42 U.S.C. § 1983 against an official in an individual capacity to vindicate rights created under Section 504 of the Rehabilitation Act. *See, Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (joining sister circuits which have determined that Congress intended to foreclose on the more general enforcement provisions of § 1983 to vindicate rights under the Rehabilitation Act). Thus, the district court correctly decided that any individual capacity claims as against Heidi Fettic, Terry Smith, and Kimberle McKee must fail as a matter of law.

## CONCLUSION

Weatherford brought claims under the FHA, Rehabilitation Act, and various HUD regulations because she desired additional housing benefits under the auspices of a "reasonable accommodation" for an alleged disability. The facts in this case, developed over a period of approximately a year and a half, demonstrate that NRHA

27

made every effort to assist Weatherford and provide the appropriate level of benefits. Despite these special efforts, Weatherford offered very little back in the way of cooperation and accountability for her own situation.

The laws at issue provide for equal treatment of an individual who has a disability; however, an actual documented disability must exist. The only disability ever established by Weatherford was one related to a back injury. For that injury she was always permitted to rent a ground-floor housing unit. This single disability did not support her requests for additional rooms for studying and physical therapy. She simply never established for the district court a disability which would trigger and support a claim for disability discrimination for failure to reasonably accommodate, and her opening brief provides nothing to dispute the findings of the district court on any of her claims.

As such, Appellees respectfully request this Court affirm the district court's grant of summary judgment in favor of Appellees.

## STATEMENT OF RELATED CASES

In accord with Circuit Rule 28-2.6, Appellees hereby state that there are no other cases pending with this Court that are deemed related.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(5)(A) and Circuit Rule 32-1, I hereby certify that the attached opening brief is proportionately spaced, has a typeface of 14-point and contains 9,581 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

DATED this 14th day of November, 2013.

ERICKSON, THORPE & SWAINSTON, LTD.

By:    /s/ Charity F. Felts, Esq. /s/
THOMAS P. BEKO, ESQ.
CHARITY F. FELTS, ESQ.
99 W. Arroyo Street, Reno, Nevada 89509
Attorneys for Appellees

28

## SERVICE LIST

I I hereby certify that I am an employee of ERICKSON, THORPE & SWAINSTON, LTD., and I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 14, 2013. I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by first-class mail, postage prepaid, for delivery within 3 calendar days, to the following non-CM/ECF participants:

Charlotte Weatherford
P.O. Box 14254
So. Lake Tahoe, CA 96151

Dated this 14th day of November, 2013.

_____/s/ Dana Matthews /s/_____

Dana Matthews